IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| **Secure Matrix LLC,** | Case No. 7:25-cv-00120-DC-DTG |
| Plaintiff, | Patent Case |
| v. | Jury Trial Demanded |
| **Santikos Real Estate Services, LLC,** | |
| Defendant. | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

1. Plaintiff Secure Matrix LLC ("Plaintiff"), through its attorneys, complains of Santikos Real Estate Services, LLC ("Defendant"), and alleges the following:

**PARTIES**

2. Plaintiff Secure Matrix LLC is a limited liability company organized and existing under the laws of DE that maintains its principal place of business at 261 W. 35th Street, Suite 1003, New York, NY 10003.

3. Defendant Santikos Real Estate Services, LLC is a limited liability company organized and existing under the laws of TX that maintains an established place of business at 4630 N Loop 1604 W Ste 501, San Antonio, Texas, 78249.

**JURISDICTION**

4. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

5.      This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Defendant because it has engaged in systematic and continuous business activities in this District. As described below, Defendant has committed acts of patent infringement giving rise to this action within this District.

## VENUE

7.      Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant has an established place of business in this District. In addition, Defendant has committed acts of patent infringement in this District, and Plaintiff has suffered harm in this district.

## PATENT-IN-SUIT

8.      Plaintiff is the assignee of all right, title and interest in United States Patent No. 8,677,116 (the "Patent-in-Suit"); including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Patent-in-Suit. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the Patent-in-Suit by Defendant.

## THE '116 PATENT

9.      The '116 Patent is entitled "Systems and methods for authentication and verification," and issued 2014-03-18. The application leading to the '116 Patent was filed on 2013-08-09. A true and correct copy of the '116 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10.      Prior to the invention of the '116 Patent, conventional systems and methods for authenticating users seeking to conduct interactions with secured capabilities were ineffective and vulnerable to security breaches. These conventional systems typically relied on simple

username and password mechanisms that could be easily compromised through various attacks, rendering security protection inadequate once breached.

11. The conventional authentication solutions of the prior art had several technological deficiencies. For example, conventional solutions were dependent on users remembering "a multitude of passwords" with "different password requirements" for multiple websites, which frequently resulted in significant costs spent on "customer support services for lost and forgotten passwords." '116 Patent, 32:63-33:2.

12. Prior art authentication methods also depended on static, single-factor authentication mechanisms that were readily susceptible to compromise. This technical approach was fundamentally flawed because once a password was obtained by an unauthorized user, the protection was entirely lost, and the user would need to "notify [each] other website" individually when security was compromised. '116 Patent, 33:6-9.

13. The '116 Patent addressed these technological deficiencies by providing computer systems and methods for "authenticating a user seeking to conduct at least one interaction with a secured capability." '116 Patent, 1:29-31. The invention recognized that authentication could be improved through a multi-factor approach utilizing "reusable identifiers" in combination with "user verification information" that is derived from user-specific or device-specific data. '116 Patent, Claim 1.

14. To address the technological deficiencies of conventional systems and methods, and to provide enhanced security, the '116 Patent claims unconventional and inventive systems and methods implementing a reusable identifier authentication system that provides multiple layers of security protection. The claimed invention provides an approach that maintains protection by utilizing a "reusable identifier corresponding to the secured capability" that is

assigned for use "for a finite period of time," and combining this with "user verification information" that can include both user-specific and device-specific information. '116 Patent, Claim 1.

15. The systems and methods claimed in the '116 Patent represent an architectural advancement in computer security technology by providing a protection mechanism that maintains security integrity through a unique and inventive combination of reusable identifiers and user verification information. Thus, the claimed invention implements an approach to authentication that was not previously available in conventional systems. '116 Patent, 32:56-60 ("By using reusable identifiers that do not include user specific or transaction specific information, certain embodiments described herein can advantageously provide a universal login or universal payment application that can work on every website and can provide an exceptional user experience.").

16. Rather than simply computerizing pre-existing processes, the '116 Patent claims specific implementations not previously available in the prior art, wherein authentication is enhanced through an inventive and unconventional multi-factor approach that improves security while simultaneously enhancing user experience. As the '116 Patent explains, the invention provides "a level of safety over a million times greater than systems that utilize just a login and password." '116 Patent, 33:3-4.

17. The authentication systems and methods claimed in the '116 Patent improved computer functionality by integrating a reusable identifier with user verification information to create a more robust and efficient authentication framework that prior art solutions could not provide. This unconventional and inventive approach permits secure authentication across multiple platforms while eliminating the need for users to remember multiple passwords or for

companies to maintain expensive customer support services for lost credentials. '116 Patent, 32:56-33:4.

18.  As the '116 Patent explains, the invention provides significant advantages, as "all the supporting websites will immediately work with the new PIN when a user changes the PIN on his smartphone, and the user does not need to notify any other website, as would be needed for systems that utilize passwords." '116 Patent, 33:6-9. This capability means that the authentication system can be updated universally and efficiently without requiring changes to multiple websites or systems, even during execution.

19.  The inventive concepts of the '116 Patent provided a superior a technical solution to the technical problem of authentication, sparing computer system resources from being expended on password recovery and maintenance, reducing the risk of compromised accounts, and creating a uniform authentication system that works across multiple platforms.

20.  A further focus of the claimed advance is the assignment of the reusable identifier "for a finite period of time," the correlation of signals received within this time window, and the evaluation of authorization based on this time-sensitive approach. The '116 Patent's time-limited reusable identifier represents a concrete improvement over conventional authentication systems. As explained in the specification, when using the processor to evaluate authorization, the system can determine "a first time of receipt of the first signal and a second time of receipt of the second signal, and can compare the time differential between the first time and the second time." '116 Patent, 13:29-33. For example, specification further explains that "if the time differential is less than or equal to the finite and predetermined period of time for the reusable identifier... the validation server 60 can evaluate that the user 10 is authorized," while "if the time differential is greater than the finite and predetermined period of time... the validation server 60 can evaluate

that the user 10 is not authorized." *Id.*, 13:33-41. This time-sensitive approach provided a superior technological solution as compared to conventional systems and methods in that it prevented replay attacks where an intercepted identifier might be used at a later time by an unauthorized party.

21.     Moreover, the implementation of a time-limited reusable identifier provides a specific technological improvement over conventional systems by both enhancing security and maintaining user convenience. The specification explains how the reusable identifiers can be "only valid for a finite and predetermined period of time (e.g., one or more minutes, one or more hours, one or more days) but can be used in multiple such periods of time." '116 Patent, 9:42-46. This approach allows the system to implement a "round robin" usage of identifiers where "after the period of time has elapsed, the verification server 60 deletes the record corresponding to the reusable identifier 214 so it can be reused again" without "performing any timestamp comparison." '116 Patent, 13:43-45. This specific technical implementation represents a concrete improvement that increases computer and network security by preventing unauthorized access through expired credentials, while simultaneously reducing system complexity and computer resource usage by enabling reuse of identifiers in a controlled, secure manner.

22.     These inventive concepts are captured in the limitations of Claim 1 reciting steps of "using the computer system to receive a first signal from the computer providing the secured capability, the first signal comprising a reusable identifier corresponding to the secured capability, the reusable identifier assigned for use by the secured capability for a finite period of time," "using the computer system to receive a second signal from an electronic device being used by the user, the second signal comprising a copy of the reusable identifier and user verification information," and "using a processor to evaluate, based at least on the first signal and

the second signal, whether the user is authorized to conduct the at least one interaction with the secured capability." These steps require the inventive and unconventional secure authentication protocol utilizing reusable identifiers and user verification information to significantly enhance computer security.

23. None of the methods or systems of the '116 Patent were previously performed by human beings, or capable of being performed in the human mind, as they necessarily involve complex computer systems communicating through network protocols to implement a multi-factor authentication system using reusable identifiers and user verification information within specific time periods.

## COUNT 1: INFRINGEMENT OF THE '116 PATENT

24. Plaintiff incorporates the above paragraphs herein by reference.

25. **Direct Infringement**. Defendant has been and continues to directly infringe one or more claims of the '116 Patent in at least this District by making, using, offering to sell, selling and/or importing, without limitation, at least the Defendant products identified in the charts incorporated into this Count below (among the "Exemplary Defendant Products") that infringe at least the exemplary claims of the '116 Patent also identified in the charts incorporated into this Count below (the "Exemplary '116 Patent Claims") literally or by the doctrine of equivalents. On information and belief, numerous other devices that infringe the claims of the '116 Patent have been made, used, sold, imported, and offered for sale by Defendant and/or its customers.

26. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, the Exemplary '116 Patent Claims, by having its employees internally test and use these Exemplary Products.

27.     **Actual Knowledge of Infringement**. The service of the Original Complaint filed on March 12, 2025, in conjunction with the attached claim charts and references cited, constitutes actual knowledge of infringement as alleged here.

28.     Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the '116 Patent. On information and belief, Defendant has also continued to sell the Exemplary Defendant Products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '116 Patent. See Exhibit 2 (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).

29.     **Induced Infringement**. At least since being served by this Complaint and corresponding claim charts, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '116 Patent, literally or by the doctrine of equivalents, by selling Exemplary Defendant Products to their customers for use in end-user products in a manner that infringes one or more claims of the '116 Patent.

30.     Exhibit 2 includes charts comparing the Exemplary '116 Patent Claims to the Exemplary Defendant Products. As set forth in these charts, the Exemplary Defendant Products practice the technology claimed by the '116 Patent. Accordingly, the Exemplary Defendant Products incorporated in these charts satisfy all elements of the Exemplary '116 Patent Claims.

31.     Plaintiff therefore incorporates by reference in its allegations herein the claim charts of Exhibit 2.

32.     Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

## JURY DEMAND

33. Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A judgment that the '116 Patent is valid and enforceable

B. A judgment that Defendant has infringed directly and indirectly one or more claims of the '116 Patent;

C. An accounting of all damages not presented at trial;

D. A judgment that awards Plaintiff all appropriate damages under 35 U.S.C. § 284 for Defendant's continuing or future infringement, up until the date such judgment is entered with respect to the '116 Patent, including pre- or post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

E. And, if necessary, to adequately compensate Plaintiff for Defendant's infringement, an accounting:

   i. that this case be declared exceptional within the meaning of 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys fees against Defendant that it incurs in prosecuting this action;

   ii. that Plaintiff be awarded costs, and expenses that it incurs in prosecuting this action; and

   iii. that Plaintiff be awarded such further relief at law or in equity as the Court deems just and proper.

Dated: April 30, 2025                Respectfully submitted,

/s/ Isaac Rabicoff
Isaac Rabicoff
Rabicoff Law LLC
4311 N Ravenswood Ave Suite 315
Chicago, IL 60613
7736694590
isaac@rabilaw.com


**Counsel for Plaintiff**
**Secure Matrix LLC**

## CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of the foregoing document was served on all parties who have appeared in this case on April 30, 2025, via the Court's CM/ECF system.

                                                               */s/ Isaac Rabicoff*
                                                               Isaac Rabicoff