**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **SECURE MATRIX LLC,** | **Civil Action No: 7:25-cv-00120-DC-DTG** |
| **Plaintiff,** | **PATENT CASE** |
| **v.** | **JURY TRIAL DEMANDED** |
| **SANTIKOS REAL ESTATE SERVICES, LLC,** | |
| **Defendant.** | |

**DEFENDANT SANTIKOS THEATERS, LLC'S REPLY IN SUPPORT OF ITS
RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Secure Matrix has filed almost 40 lawsuits asserting claims of U.S. Patent No. 8,677,116. Not one of those lawsuits has reached a merits decision because Secure Matrix does not want to actually test the merits of its asserted claims. Many of these lawsuits have been dismissed in the early stages.

This time, Secure Matrix is attempting to delay the Court's determination of the claims' eligibility under Section 101. After taking many extensions to respond to Defendant's motions on this issue (originally filed over two months ago), including filing an amended complaint, Secure Matrix is seeking delay resolution of this issue by purporting to make up fact issues that prevents the Court from ruling on subject matter eligibility at the Rule 12 stage. Importantly, however, Secure Matrix has failed to explain how any fact issue would impact the Section 101 analysis. (*See* Dkt. 24 "Opp.," 6-8); *see, e.g.*, *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360- 61 (Fed. Cir. 2023) ("[T]he patentee must propose a specific claim construction or ***identify specific facts that need development and explain why those circumstances must be resolved*** before the scope of the claims can be understood for § 101 purposes.") (emphasis added). Because these manufactured issues do not affect that analysis, the claims are directed to ineligible subject matter and should be found invalid. This motion is thus ripe for the Court's consideration.

The asserted claims describe the concept of authentication, which is an abstract idea ineligible for patenting. While most of Secure Matrix's response boasts the use of a "reusable identifier" for a "finite period of time," the specification concedes these elements are conventional and do not represent a specific improvement to computer technology. The specification describes that the "reusable identifier" can merely "include data, such as information about the company providing the secured capability, the particular secured capability that corresponds to the TSSID, or both" and "can include a short sequence of numbers, letters, or characters that identifies the

company providing the secured capability, the secured capability, or both." '116 Patent at 8:55-61. Further, the specification concedes that "the term 'reusable' in conjunction with the reusable identifier 214 has its broadest reasonable interpretation, including but not limited to, an identifier that can be used more than once." *Id.* at 9:7-10. In other words, like a username and password, a reusable identifier is a generic credential.

Secure Matrix also argues that the claims provide improvements over the prior art, but even if the claims of the '116 Patent capture any purported improvements, those improvements are to the abstract idea itself. The Federal Circuit has held that "[a]s a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."). That holding applies here.

When there is no plausible reading of a patent that would enable it to satisfy the threshold inquiry under § 101, an early Rule 12(b)(6) dismissal is appropriate. To avoid waste of judicial and party resources further litigating invalid patents, Defendant Santikos Theaters, LLC, incorrectly named Santikos Real Estate Services, LLC, requests the Court dismiss Secure Matrix's First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    THE ASSERTED CLAIMS ARE INVALID

### A.    Claim 1 of the '116 Patent is representative.

Secure Matrix does not argue that the Court may not treat claim 1 as representative. The Federal Circuit has explained that "Courts may treat a claim as representative in certain situations, such as if the patentee does not present ***any meaningful argument*** for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim

as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (emphasis added);

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016). Not only did Secure

Matrix provide no **meaningful** argument, it provided **no argument** on the representative nature of

claim 1. Claim 1 is thus representative.

> **B.** *Alice* **Step One: The asserted claims are directed to an abstract idea.**

The claims of the asserted patent are directed to an unpatentable, abstract idea because they

claim no more than the "longstanding," "routine," and "conventional" concept of recursively

encrypting data. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2356–59 (2014).

None of Secure Matrix's arguments can overcome the abstract nature of its patent.

Secure Matrix first takes issue that Defendant's characterization of the abstract idea

"presents a significant oversimplification of the '116 Patent's claims." (Opp. at 8.) Secure Matrix

argues that these characterizations fail to capture that the claims "represent an architectural

advancement in computer security technology by providing a protection mechanism that maintains

security integrity through a unique combination of reusable identifiers and user verification

information." (Opp. at 9.) This too, however, is abstract, as the specification concedes that the

"reusable identifier" is nothing more than a "short sequence of numbers, letters, or characters that

identifies the company providing the secured capability, the secured capability, or both" ('116

Patent at 8:58-61) and the "user verification information" is merely "information regarding (e.g.,

specific to) the user (e.g., the user's first name, family name, email address, phone number),

information regarding (e.g., specific to) the first electronic device 20 (e.g., a device identification

character string, hardware-specific information such as manufacturer or operating system of the

first electronic device 20) or both" (*id.* at 12:6-13). In other words, the claims cover authenticating

a user for accessing a secured capability consisting of evaluating credentials (e.g., a time-limited

alpha-numeric identifier with information pertaining to the user or user device). At bottom, like

the prior art username/password authentication disclaimed in the specification, this is an abstract idea because it simply involves authentication through receiving, evaluating, and transmitting data. As an offline analogue, this is like prohibition-era speakeasies that would allow access using a time-varying code word with identification information. That idea—authentication with time-varying credentials—is to what the '116 Patent attempts to lay claim.

Secure Matrix attempts to liken the claims of the '116 Patent to those in *Ancora Technologies, Inc. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). (Opp. at 9.) But, as explained in Defendant's Motion, the Federal Circuit in *Ancora* was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly ***unexpected way***." 908 F.3d at 1348 (emphasis added). The claimed method of the '116 Patent is not done in an unexpected or unconventional way. It merely performs authentication by comparing and evaluating data pertaining to the secured capability and the user seeking access.

Next, in conclusory fashion, Secure Matrix does not meaningfully distinguish the cases cited in Defendant's motion—*Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021), *Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*, No. 2022-1468, 2023 WL 193162 (Fed. Cir. Jan. 17, 2023), *Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 2021-1906, 2022 WL794981 (Fed. Cir. 2022), *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178 (Fed. Cir. 2020), *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529 (Fed. Cir. 2020). Each of these cases found that authentication is conventional activity and, without more, leaves claims in the realm of abstraction. Notably, some of the claims held ineligible in *Universal Secure Registry* claimed a "time-varying multicharacter code," which the Federal Circuit held was "conventional and long-standing." 10 F.4th at 1349-50. Here, too, the claims

recite nothing but the conventional activity of authentication, even if done using time-varying reusable identifiers (e.g., time-varying multicharacter codes).

Secure Matrix also touts purported benefits from practicing the abstract idea recited in the asserted claims: improved security and efficiency. (Opp. at 11.) But, "the fact that an abstract idea may have beneficial uses does not mean that claims embodying the abstract idea are rendered patent eligible." *In re Mohapatra*, 842 F. App'x 635, 638 (Fed. Cir. 2021). These benefits flow directly from performing the abstract idea with well-known computer functionality: authentication using time-varying identifiers and user information. *See, e.g.*, *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018) ("These benefits, however, are not improvements to database functionality. Instead, they are benefits that flow from performing an abstract idea in conjunction with a well-known database structure."). Nothing in the claims allows a computer to do something it could not do before. *Cf. Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1308 (Fed. Cir. 2018) (holding eligible claims construed to require "a new kind of file that enables a computer security system to do things it could not do before"). The claims simply authenticate users using credentials that can be reused and time-varied. In other words, the claims cover the abstract idea of authentication, not an improvement to technology.

At bottom, while Secure Matrix attempts to dress up the asserted claims, nothing in Secure Matrix's Response changes the abstract nature of the asserted claims.

C.    *Alice* **Step Two: The asserted claims contain no inventive concept.**

Because the claims of the asserted claims are directed to an abstract idea, the Court must next determine whether they contain an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. at 222 (internal quotations omitted). To pass this test, the claims "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial, Inc. v.*

*Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (quotation omitted). Here, the claims are broadly generic and do not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

Secure Matrix's contention that the claim limitations provide an unconventional "architecture" is unavailing. (Opp. at 12-13.) Again, this "unconventional" architecture is nothing more than authentication with time-varying information that can be reused. Reusable, alphanumeric information that can be time-varied, however, is not inventive. *See Universal Registry*, 10 F.4th at 1349-50. Unlike the *Amdocs* case cited by Secure Matrix, the asserted claims do not "combine" generic components in an "unconventional manner" to solve a "particular technological problem." *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-02 (Fed. Cir. 2016).

Secure Matrix does not even attempt to argue that the claims of the '116 Patent include any non-conventional hardware or software. Nor could it. The specification concedes that the hardware can "take a wide variety of forms, including processors, general-purpose computers, network servers, workstations, personal computers, mainframe computers and the like." *Id.* at 5:36–42. The specification also explains that the claimed "reusable identifier" can include "a short sequence of numbers, letters, or characters that identifies the company providing the secured capability, the secured capability, or both." *Id.* at 8:58–61. Finally, the "user verification information" is merely "information regarding (e.g., specific to) the user (e.g., the user's first name, family name, email address, phone number), information regarding (e.g., specific to) the first electronic device 20 (e.g., a device identification character string, hardware-specific information such as manufacturer or operating system of the first electronic device 20) or both." *Id.* at 12:6–13. In essence, the '116

6

Patent takes the abstract idea—authentication—and applies it using generic computer components and conventional methods.

All of the components are generic, and the mere combination of them do not provide any concrete improvement to computer technology under the *Alice* step two analysis. The '116 Patent claims thus fail *Alice* step two because they do not recite an inventive concept.

## II.   THERE ARE NO CLAIM CONSTRUCTION DISPUTES PREVENTING A RULING AT THE RULE 12 STAGE

Secure Matrix is silent on the issue of claim construction in its Response. This silence makes sense because there is no construction that would save the claims from their ineligibility.

## III.   THERE ARE NO FACTUAL DISPUTES PREVENTING A RULING AT THE RULE 12 STAGE

Neither is there a factual dispute that prevents dismissal under Rule 12(b)(6). Secure Matrix attempts to manufacture factual disputes, arguing that "Defendant raises a factual dispute regarding whether methods implementing a reusable identifier authentication system that provides multiple layers of security protection and utilizes a time-sensitive approach, especially one using a reusable identifier for a 'finite period of time,' were somehow 'well-understood, routine and conventional' at the time of invention, contrary to the allegations of Plaintiff's FAC." (Opp. at 14-15.) This argument misses the mark because Secure Matrix seeks to determine whether the abstract idea itself was well-understood, routine and conventional. But, "even accepting [Secure Matrix's] view that these particular uses are not well -known, routine, or conventional, '[a] claim for a *new* abstract idea is still an abstract idea.'" *PersonalWeb Techs. LLC. v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021) (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018)). "The claims here are ineligible because their innovation is an innovation in ineligible subject matter." *SAP*, 898 F.3d at 1163. When faced with the question—"[w]hat else is there in the claims before us?"—the answer is clear: "not much." *PersonalWeb*, 8 F.4th at 1319 (quoting *Mayo Collaborative*

*Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012). As demonstrated above, the elements on their own are conceded by the specification as being well-understood, routine, and conventional. The combination of those conventional elements merely results in the abstract concept of authentication. The Court should not countenance Secure Matrix's efforts to delay resolution of the Section 101 inquiry.

## IV.    LEAVE TO AMEND SHOULD BE DENIED

Secure Matrix finally requests leave to amend its complaint as one last attempt to save its claims. Secure Matrix already amended its complaint in response to Defendant's initial Section 101 motion. (*See* Dkt. No. 14.) Even so, Secure Matrix's request should be denied because it does not identify any amendment it could make to save its claim—and for good reason. No amendment could change the fact that the claims of the '116 Patent are invalid because they are directed to an abstract idea and do not contain an inventive concept. Thus, any amended complaint would still fail to state a claim upon which relief could be granted and amendment would be futile.

## V.    CONCLUSION

For the reasons above, Defendant requests that the Court grant its motion and dismiss Secure Matrix's First Amended Complaint. Because leave to amend would be futile, Defendant requests dismissal with prejudice.

Dated: June 3, 2025                              Respectfully submitted,

                                                 By: */s/ Lance E. Wyatt*
                                                 Neil J. McNabnay
                                                 Texas Bar No. 24002583
                                                 mcnabnay@fr.com
                                                 Lance E. Wyatt
                                                 Texas Bar No. 24093397
                                                 wyatt@fr.com
                                                 **FISH & RICHARDSON P.C.**
                                                 1717 Main Street, Suite 5000
                                                 Dallas, TX 75201
                                                 (214) 747-5070 – Telephone
                                                 (214) 747-2091 – Facsimile

                                                 **ATTORNEYS FOR DEFENDANT
                                                 SANTIKOS THEATERS, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on June 3, 2025 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

                                                 */s/ Lance E. Wyatt*
                                                 Lance E. Wyatt

9